UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:08-cv-224-KSF

GARY WATKINS, et al.                                                                    PLAINTIFFS

vs.                              **OPINION AND ORDER**

SAFETY-KLEEN SYSTEMS, INC, et al.                                          DEFENDANTS

This matter is before the Court on Plaintiffs' motion to remand and to award attorney's fees [DE 38], and Plaintiffs' motion to hold Defendant Technical Products, Inc. ("Technical's") motion to dismiss in abeyance [DE 47]. Having been briefed, these motions are ripe for review.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs' Complaint was filed in the Madison Circuit Court April 11, 2008. Plaintiff Gary Watkins alleged he began working for L3 Communication's predecessor at Blue Grass Army Depot in August 2001 as a helicopter mechanic. [Complaint ¶¶ 20, 23]. He alleged that during his employment, he "was continually exposed to numerous chemicals, including, but not limited to ... distillates manufactured and/or distributed by the Defendants from approximately 2001 until 2007." *Id.* at ¶ 21. As a consequence, he seeks damages under theories of product liability, negligence, breach of implied warranty, and gross negligence. Gina Watkins' claim is for loss of consortium.

On May 16, 2008, Defendants Safety-Kleen Systems, Inc.; LPS Laboratories; Minnesota Mining and Manufacturing Co.; Henkel Corp.; Dillon Supply Co.; Technical Products, Inc.; The Sherwin-Williams Co.; Exxon Mobil Corp.; Permatex Co., Inc.; Calgaz, LLC; WD-40 Co.; Organic Products Co.; and Sealed Unit Parts Co., Inc. filed a Notice of Removal pursuant to 28 U.S.C. § 1446 in which they alleged federal enclave jurisdiction and complete diversity based upon fraudulent joinder of Technical. [DE 1].

Plaintiffs moved to remand claiming that Defendants failed to show that Kentucky ceded jurisdiction over Blue Grass Army Depot ("BGAD") and that the United States accepted exclusive jurisdiction pursuant to 40 U.S.C. § 3112. Plaintiffs further claimed that there is not complete diversity and that not all defendants timely joined in the removal. [DE 38]. In opposing Defendants' assertion of federal question jurisdiction over BGAD as a federal enclave, Plaintiffs noted that Defendants rely on: (1) two cases in which the status of the BGAD was not in question, and it was simply assumed to be an enclave; (2) the affidavit of counsel for the Depot stating in a conclusory fashion that "the installation was established as a federal enclave with exclusive federal jurisdiction" [DE 1-9]; and (3) a 1962 Inventory Report prepared by the General Services Administration purporting to show the jurisdictional status of several facilities, including the BGAD [DE 1-10]. Plaintiffs argued that, unlike some other federal properties in Kentucky, there is no specific statute or other evidence that Kentucky ceded jurisdiction to the United States or that the United States accepted exclusive jurisdiction over BGAD.

Regarding diversity, Plaintiffs argued that Technical was a Kentucky corporation and that Defendants failed to show it was fraudulently joined. They claimed that, even if Technical ceased supplying products in 1997, "that does not eliminate the chance that Watkins was exposed to its products when he worked for L3 Communications from 2001-2007." [DE 38, p. 12]. Accordingly, Plaintiffs claimed they stated a cause of action against Technical such that joinder is not fraudulent.

Plaintiffs' third ground for remand was that Defendants' removal notice was not timely. In support, Plaintiffs said that the first Defendant was served April 18, 2008,[1] but Custom Coated Products ("Custom") did not file its consent to remove until thirty-two days later. Plaintiffs acknowledged the Sixth Circuit decision in *Brierly v. Alusuisse Flexible Packing, Inc.*, 184 F.3d 527 (6th Cir. 1999), which holds that "each" defendant has thirty days from the date it was served to

---

[1] Plaintiffs erroneously rely on the date the Complaint was received by the Secretary of State, not the date it was received by Custom.

remove, rather than thirty days from the date the "first" defendant was served. They relied on an earlier decision to the contrary from the Fifth Circuit, *Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254 (5th Cir. 1988), "to preserve this issue." [DE 38, p. 16].

Finally, Plaintiffs argued they are entitled to their costs and attorney's fees "as a result of the Defendants' blatantly improper removal of this case." *Id.* at 17. They contended that the grounds for removal do not present a "close call" and that an award of fees is proper under the circumstances.

Defendants responded that unanimous consent to remove was timely provided. They note that the Sixth Circuit specifically rejected the reasoning of *Getty Oil* on which plaintiffs rely. *See Brierly*, 184 F.3d at 533. In response to Plaintiffs' arguments regarding service on Custom, Defendants stated Custom was served and received a copy of the Complaint on May 9, 2008, as shown on the return receipt. [DE 42-2, Ex. 1]. Defendants' Notice of Removal was filed May 16, 2008, well within thirty days after Custom received the initial pleading.

Defendants urged that the specific facts plead in their notice of removal and affidavit were sufficient to show that BGAD was a federal enclave. Alternatively, they provided a supplemental affidavit and exhibits in further support of their claim of exclusive federal jurisdiction. Regarding diversity jurisdiction and fraudulent joinder of Technical, Defendants noted that the plain language of Plaintiffs' complaint refuted any claim against Technical. Defendants further incorporate Technical's motion to dismiss as demonstrating that Plaintiffs cannot show any reasonable basis for the imposition of liability on Technical. Finally, Defendants argue that the request for attorney's fees should be denied under recent case law.

Plaintiffs' Reply reiterated their claim that the notice of removal was untimely under the Fifth Circuit decision in *Getty Oil*, while acknowledging the contrary decision of the Sixth Circuit and seeking to preserve the issue in light of the split in the Circuits. Regarding the documents provided by Defendants to support the designation of BGAD as a federal enclave, Plaintiffs argued that they

provide "no substance" regarding the issue. [DE 44, p. 3]. They particularly noted that not one of the letters to the Kentucky Governors specifically mention the BGAD. They argued that general letters accepting exclusive jurisdiction do not establish a federal enclave. *Id.* at 4-5. Plaintiffs argued that these documents merely raise doubts which should be resolved in favor of remand. Plaintiffs also claimed that the supplemental documents are too late to meet the thirty-day limit for removal and that the failure to include these documents in the notice of removal was a fatal defect. *Id.* at 8. Plaintiffs argued that allowing supplemental evidence would negate the time requirements for removal.

Regarding the joinder of Technical, Plaintiffs argue that the 2001-2007 time frame in their complaint describes when Gary Watkins was exposed to products at BGAD, not when the products were manufactured or distributed. [DE 44 at 10-11]. They argued that "Defendants have not demonstrated that it is impossible that Gary Watkins was exposed to products manufactured and/or distributed by Technical Products" and that "there could have been a surplus of products supplied by Technical" at BGAD when he started working there.

## II.     ANALYSIS

### A.     Standard of Review

"The party seeking removal bears the burden of demonstrating that the district court has original jurisdiction." *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). *See also*, *Long v. Bando Manufacturing of America, Inc.*, 201 F.3d 754, 757 (6th Cir. 2000). "[B]ecause they implicate federalism concerns, removal statutes are to be narrowly construed" with all doubts resolved against federal jurisdiction. *Id.* at 757. The well-pleaded complaint rule, "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 391 (1987). "There are two narrow exceptions to the well-pleaded complaint rule. A plaintiff cannot avoid federal

jurisdiction when (1) federal law completely preempts the state-law claims; or (2) the state-law claims raise substantial questions of federal law." *In re Air Crash at Lexington, Kentucky, August 27, 2006*, 486 F. Supp.2d 640, 645 (E.D. Ky. 2007).

The removing party also has the burden of proving that a non-diverse defendant has been fraudulently joined. *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). Fraudulent joinder may be established in three situations: (1) when there is no colorable basis for a claim against the non-diverse defendant; (2) when a plaintiff engages in outright fraud in pleading jurisdictional allegations; and (3) when the plaintiff joins a defendant who has no joint, several, or alternative liability with a diverse defendant and there is no nexus between the claims against the diverse and non-diverse defendants. *Salisbury v. Purdue Pharma, L.P.,* 166 F. Supp. 2d 546, 548 (E. D. Ky. 2001). The question becomes "whether there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved." *Alexander*, 13 F.3d at 949.

### B. Timeliness of Removal

Plaintiffs acknowledge that this Court is bound by the Sixth Circuit's holding in *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 (6th Cir. 1999) that individual defendants have thirty days from the date they are served with process or a complaint to join a valid removal petition. [DE 44, p. 2]. *See also Loftis v. United Parcel Service, Inc.*, 42 F.3d 509, 517 (6th Cir. 2003). Under the Sixth Circuit's decisions, Custom's consent to the notice of removal was timely. Plaintiffs' claim that this case should be remanded because consent to remove was not unanimous is without merit.

### C. Supplementation of the Petition

Plaintiffs argue that the supplemental documentation provided in support of enclave jurisdiction was too late and should be disregarded by this Court. A similar argument was rejected in *Gafford v. General Elec. Co.,* 997 F.2d 150 (6th Cir. 1993).

5

> Better, if the jurisdiction in fact exists, to permit the petition for removal to be amended to reflect it. It appears that the time has come to reexamine this entire matter and expressly adopt the approach ... that amendments to the jurisdictional allegations of removal petitions should be permitted in the same manner as amendments to any other pleading.

*Id.* at 164, quoting *Stanley Elec. Contractors, Inc. v. Darin & Armstrong Co.*, 486 F. Supp. 769 (E. D. Ky. 1980). *See also Tech Hills II Assocs. v. Phoenix Home Life Mut. Ins. Co.*, 5 F.3d 963, 969 (6th Cir. 1993) (leave granted to amend to cure deficiency in allegation of diversity of citizenship); *Roberts v. Glens Falls Ins. Co.*, 415 F. Supp. 2d 779, 782 (N. D. Ohio 2006) ("refusing to allow Defendants to amend their removal petition ... would be to elevate form over substance").

Plaintiffs rely on a 1998 unpublished decision from the Northern District of California to claim that "allegations of substance" should not be allowed after thirty days. There are two serious flaws in this argument. First, Plaintiffs argued in their reply that the supplemental documents did not add any "substance" to the issue. [DE 44, p. 3]. Accordingly, the case they cite has no factual application. Second, the Sixth Circuit's subsequent cases are to the contrary and will allow amendment if jurisdiction in fact exists. Under the Sixth Circuit's precedents, this Court is of the opinion that the supplemental documents should be considered in support of the removal petition. As in *Gafford*, there is no point in requiring Defendants to formally amend their petition for removal. *Gafford*, 997 F.2d at 164, n. 6.

**D.    Enclave Jurisdiction**

Plaintiffs did not plead a federal question in their complaint. However, Gary Watkins' alleged injuries occurred during his employment at BGAD, which Defendants argue is a federal enclave subject to exclusive federal jurisdiction. If BGAD is a federal enclave, then this Court has subject matter jurisdiction regardless of the allegations in the complaint. "Federal courts have federal question jurisdiction over tort claims that arise on 'federal enclaves.'" *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1250 (9th Cir. 2006). "It is settled law that tort actions which arose

6

from incidents occurring in federal enclaves may be initiated in or removed to federal court as part of the district court's federal question jurisdiction. *Fuller v. Tennessee Valley Authority*, 2007 WL 2077639 at *2 (E.D. Tenn. 2007).

Authorization for federal jurisdiction over government property is found in the Federal Enclave Clause, Article I, Section 8, clause 17 of the United States' Constitution. Prior to 1940, federal jurisdiction was presumed without further affirmation by the United States. 40 U.S.C. § 255; *United States v. Gabrion*, 517 F.3d 839, 848 (6th Cir. 2008). The presumption was reversed by amendment in 1940. *Id.* at 849. In 2002, Section 255 was renumbered as 40 U.S.C. § 3112. *Id.* at 850. The amended statute for obtaining exclusive federal jurisdiction after 1940 over land acquired by the federal government reads as follows:

> When the head of a department, agency or independent establishment of the Government ... considers it desirable, that individual may accept or secure from the State in which land or an interest in land ... is situated, consent to, or cessation of, any jurisdiction over the land or interest not previously obtained. The individual shall indicate acceptance of jurisdiction on behalf of the Government by filing a notice of acceptance with the Governor of the State ... where the land is situated.

40 U.S.C. § 3112.

Prior to amendments in 1942 and 1954, parallel legislation in Kentucky provided:

> That the Commonwealth of Kentucky consents to the acquisition by the United States of all lands and appurtenances in this state heretofore legally acquired, or that may be hereafter legally acquired by purchase, or by condemnation, for the erection of forts, magazines, arsenals, dock yards, and other needful buildings, including post offices, custom houses, courthouses; also lands for locks, dams and canals in improving the navigation of the rivers and waters within and on the borders of the Commonwealth of Kentucky.

Act of August 16, 1892, Acts of the General Assembly, Laws of Kentucky, Ch. 92, p. 227; KRS 3.010.[2] The United States established BGAD as a military installation through eminent domain in

---

[2] The present verison of KRS 3.010 provides: "The Commonwealth of Kentucky consents to the acquisition by the United States of all lands and appurtenances in this state, by condemnation, gift or purchase, which are needful to their constitutional purposes, but said acquisition shall not be deemed to result in a cession of jurisdiction by this Commonwealth."

1941. [DE 42, Ex. 5, ¶ 4]. In 1943, 1944 and 1945, the Secretary of War noted that KRS 3.010 permitted the assumption of exclusive federal jurisdiction over lands acquired for military purposes and wrote the then Governors of Kentucky accepting that exclusive jurisdiction. [DE 42, Ex. 5, Attachments 1-4]. These letters clearly state that the "United States accepts exclusive jurisdiction over *all* lands acquired by it for military purposes within the Commonwealth of Kentucky...." *Id.*, emphasis added. Accordingly, the documents provided by the Defendants establish both Kentucky's consent to and the United States' acceptance of exclusive federal jurisdiction over all lands previously acquired for military purposes. These letters of acceptance encompass BGAD after its acquisition in 1941.

Additional support for the conclusion that BGAD is a federal enclave is found in *Hughes Transportation, Inc. v. United States*, 121 F. Supp. 212 (Ct. Cl. 1954), where the court considered the appropriate freight charges for a federal government trucking contract to move munitions from BGAD to Fort Knox and to Camp Breckenridge. The issue was whether federal or state law controlled the applicable tariffs since the transport was between federal enclaves but involved the use of state highways. *Id.* at 220. In the course of analyzing whether the enclaves' federal law or highways' state law applied, the court discussed the creation of the three federal enclaves, including BGAD, and the consent provided by KRS 3.010:

> It appears that the federal enclaves involved in the instant case were acquired by the United States in various ways over a long period of time *and with the virtually unqualified consent of Kentucky.* Act of August 16, 1892, Acts of the General Assembly, Laws of Kentucky 1891, 1892, and 1892-93, p. 227; Kentucky Revised Statutes 1942, Chap. 3, 3.010 (s 2376).

*Id.* at 221, n. 14; emphasis added. The court thus acknowledged that at least two facilities, BGAD and Camp Breckenridge, were encompassed by the consent given in Kentucky's general statute.

In *Lathey v. Lathey*, 305 S.W.2d 920, 922 (1957), the court held that the 1954 amendment to KRS 3.010 reserving Kentucky's jurisdiction could not operate retroactively to deprive federal jurisdiction previously granted. *See also Celli v. Shoell*, 995 F. Supp. 1337, 1341 (D. Utah 1998)

("It is well settled that state laws in effect at the time of the transfer of jurisdiction over a federal enclave remain in force and become a part of the federal law governing the enclave. However, subsequently enacted state laws have no application. *See Paul v. United States*, 371 U.S. 245, 268 (1963).").

The ceding of jurisdiction for the enclave involved in *Lathey*, Fort Knox, was also by a specific statute, but there are not separate statutes for all properties for which Kentucky consented to exclusive jurisdiction. For example, in *Howard v. Commissioners of Sinking Fund of City of Louisville*, 344 U.S. 624 (1953), the court said: "By condemnation proceedings filed in 1940, the United States acquired the land on which the Ordinance Plant is located, with the consent of the Legislature of Kentucky given in a general statute. In 1941, the Secretary of the Navy on behalf of the United States accepted exclusive jurisdiction over the area, and the governor of Kentucky acknowledged this acceptance." *Id.* at 625, citing KRS 3.010. The United States Supreme Court thus recognized the exclusive federal jurisdiction over this property by reason of the consent given in the "general statute," KRS 3.010. Prior to the 1954 amendment to KRS 3.010, there are only three specific Kentucky statutes ceding jurisdiction: KRS 3.030 for Fort Knox, KRS 3.040 for Perryville, and KRS 3.060 for Zachary Taylor's burial grounds. A fourth statute, KRS 3.080, gave general consent to the United States to acquire national forests. In light of this history, the Court is not persuaded by Plaintiffs' argument that there must be a specific Kentucky statute consenting to federal jurisdiction over BGAD before it can be a federal enclave.

In *Bachman v. Fred Meyer Stores, Inc.*, 402 F. Supp. 2d 1342 (D. Utah 2005), the court faced the similar question of whether Hill Air Force Base was a federal enclave. Utah's 1943 general statute ceding jurisdiction to the United States is similar to Kentucky's.

> Jurisdiction is hereby ceded to the United States in, to and over any and all lands or territory within this state which have been or may hereafter be acquired or leased by the United States for military or naval purposes and for forts, magazines, arsenals, dock yards, and other needful buildings of every kind whatever authorized

9

>    by act of Congress; this state, however, reserving the right to execute its process,
>    both criminal and civil, within such territory.

Utah Code Ann. § 27-0-1 (1943); *Id.* at 1347. In 1942, the War Department wrote the Governor accepting exclusive federal jurisdiction. The court held that the defendants had established by a preponderance of the evidence that Hill Air Force Base had been a federal enclave under the exclusive jurisdiction of the United States since 1943. *Id.* at 1348.

In the present case, the Defendants provided not only direct, uncontradicted evidence of consent by Kentucky and acceptance of exclusive jurisdiction by the United States, but also circumstantial evidence in the form of an inventory prepared by the General Services Administration in 1964 to advise the President regarding the jurisdictional status of federal areas within the states. [DE 1-10, Ex. 4]. On this inventory, BGAD has a code of "1" for "Exclusive Legislative Jurisdiction" in the United States. *Id.* Defendants also provided evidence that Kentucky requested and received a retroceding of jurisdiction of seventy-eight acres of BGAD back to Kentucky for purposes of a road easement in 1967. [DE 42-6, Ex. 5]. Another sixteen acres of BGAD were retroceded back to Kentucky in 1986. Absent exclusive federal jurisdiction in the BGAD, these retrocessions would not have been necessary. Neither of the retroceded properties involve the facility where Plaintiff claims his injury occurred. [DE 42-6, Affidavit of Brynn Bennett].

It is the opinion of this Court that Defendants have demonstrated by a preponderance of the evidence that BGAD is a federal enclave. Accordingly, this Court has federal question jurisdiction.

      **E.    Diversity Jurisdiction**

Defendants further claimed that this Court has diversity jurisdiction because Technical Products was fraudulently joined. The basis for the claim of fraudulent joinder is that there is no reasonable basis for predicting that liability could be imposed on Technical when it ceased manufacturing and distributing products in 1997, and Plaintiffs' claim relates to products

10

manufactured and distributed from 2001 to 2007. Technical has moved to dismiss all claims against it on this same ground. It is not necessary for this Court to decide the diversity jurisdiction issue at this juncture because federal question jurisdiction otherwise exists. Whether Plaintiffs have stated a claim against Technical will be determined by a ruling on the motion to dismiss.

### F.    Motion to Hold Motion to Dismiss in Abeyance

Plaintiffs moved to hold Technical's motion to dismiss in abeyance pending a determination on their motion to remand. Defendants correctly state that no response to the motion to dismiss was filed when it was due on June 9, 2008. However, if the Court lacked subject matter jurisdiction, it would have lacked authority to rule on the merits of the motion. Having determined that subject matter jurisdiction does exist, the Court is ordering further briefing on the motion to dismiss.

### G.    Attorney's Fees

The Supreme Court recently held in *Martin v. Franklin Capital Corp*, 546 U.S. 132, 141 (2005) that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." The Sixth Circuit has held that "an award of costs under § 1447(c), including attorney fees, is inappropriate where the defendant's attempt to remove the action was 'fairly supportable,' or where there has not been at least some finding of fault with the defendant's decision to remove." *Chase Manhattan Mortgage Corp. v. Smith*, 507 F.3d 910, 913 (6th Cir. 2007) (quoting *Bartholomew v. Town of Collierville*, 409 F.3d 684, 687 (6th Cir. 2005)). Removal was appropriate in the present case. There is no basis for an award of attorney's fees.

## III.    CONCLUSION

The Court, being otherwise fully and sufficiently advised, **HEREBY ORDERS**:

A.    Plaintiffs' motion to remand and to award attorney's fees [DE 38] is **DENIED**;

11

B.   Plaintiffs' motion to hold in abeyance [DE 47] Technical Products' motion to dismiss is **DENIED AS MOOT**;

C.   Plaintiffs shall have fifteen days from the date of this Order to respond to the motion to dismiss, and Technical Products shall have eleven days thereafter for any reply. Following briefing, the motion shall be submitted to the Court for consideration.

This August 29, 2008.

Signed By:
*Karl S. Forester* KSF
United States Senior Judge