UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 5:08-cv-224-KSF

GARY WATKINS, et al.                                                            PLAINTIFFS

vs.                                    **OPINION AND ORDER**

SAFETY-KLEEN SYSTEMS, INC, et al.                                    DEFENDANTS

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the motion of Technical Products, Inc., to dismiss Plaintiffs' complaint against it for failure to state a claim. After review by the Court, the motion was converted to one for summary judgment [DE 65, 66]. Having been fully briefed, the summary judgment motion is ripe for consideration.

I.      **BACKGROUND**

Plaintiffs' Complaint  alleges that Gary Watkins was exposed to various chemicals during his employment with L3 Communications, or its predecessor, during August 2001 to April 2007 and, as a result, he was diagnosed with diseases related to the chemicals. The Complaint alleges in relevant part:

> In and during the course of his employment at L3 Communications, Plaintiff, Gary Watkins, was continually exposed to numerous chemicals ... manufactured and/or distributed by the Defendants from approximately 2001 until 2007.

Complaint, ¶ 21. The Complaint names as defendants numerous manufacturers of chemicals, including Technical Products, Inc., and claims the defendants are liable under theories of product liability, negligence, breach of warranty, and gross negligence.

Technical moved to dismiss all claims against it pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that it ceased operations in 1997 and could not possibly have "manufactured and/or distributed [products] from approximately 2001 until 2007" as alleged in the Complaint. The motion

is supported by the affidavit of the former owner's son, who worked full time with the company for twelve years.  [DE 17].

Plaintiffs rely on other paragraphs of the complaint in which they generally allege exposure to chemicals during Watkins' employment with the Depot from 2001 to 2007 [¶ 21], that the "products [were] manufactured and distributed by the defendants during the course of his work" [DE ¶ 22],  that the products were manufactured and distributed by the Defendants [¶ 24], and that Defendants had manufactured and distributed the products for many years [DE ¶ 25].  Plaintiffs also interpret the complaint as alleging "exposure" to the products between 2001 and 2007, not that the products were "manufactured or distributed" during that time frame.  Plaintiffs suggest that Technical may have supplied chemicals to the Depot prior to its cessation of business in 1997, and that those products may still have been around during Gary Watkins' employment.  [DE 63].

In their Supplemental Response to the motion for summary judgment, Plaintiffs provided the affidavit of Plaintiff Gary Watkins that he used isopropyl alcohol during this employment from 2001 to 2007.  [DE 76-2, ¶ 5].  He obtained the alcohol he used from one-gallon containers.  *Id.* ¶ 7.  During Watkins' spring 2007 investigation of chemical products used by L3 Communications, he found a material safety data sheet regarding isopropyl alcohol distributed by Technical Products, Inc.  *Id.* ¶ 6.  Handwritten at the top of the sheet is a reference to "one-gallon container in bottom of locker."  [Gillespie Depo., p. 44].  It is Watkins' belief, based upon his experience as an employee, "that the material safety data sheets were supposed to have been updated and replaced as new products were added or substituted."  [DE 76-2, ¶ 9].  The reference binder of chemicals "was up-to-date and current," to the best of his knowledge.  ¶ 8.  He, therefore, believes the isopropyl alcohol that he used up to the end of his employment in 2007 "was manufactured and/or distributed by Technical Products, Inc."  ¶ 10.

Technical Products replied that the language of Plaintiffs's Complaint is controlling, and it does not state any plausible claim that Technical Products "manufactured and/or distributed" any

2

products from 2001 until 2007.  [DE 64, p. 3].  It further argues that Plaintiffs' interpretation of the Complaint is inconsistent with the plain language used.

## II.    ANALYSIS

### A.    Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' "  *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts."  *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).  Conclusory allegations are not enough to allow a nonmoving party to withstand a motion for summary judgment.  *Id.* at 343.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Id.* at 1950.  "Factual allegations contained in a complaint must raise a right to relief above the speculative level.'"  *Bassett v. National Collegiate Athletic Assoc.*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 252.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* at 249-50 (citations omitted).

   **B.      Technical Products' Motion for Summary Judgment**

   Product liability actions in Kentucky are subject to the Kentucky Products Liability Act ("PLA"), KRS 411.300 et seq., regardless of the legal theory alleged.  *Monsanto Co. v. Reed*, 950 S.W.2d 811, 814 (Ky. 1997).  To state a claim for product liability, a plaintiff must identify the product that caused the injury.  *Collins v. Ansell, Inc.*, 2003 WL 22769266 at *2 (W.D. Ky. 2003); *Morris v. Wyeth, Inc.*, 20080 WL 2677048 at *2 (W.D. Ky. 2008).  "Causation cannot be established solely by conjecture, speculation, or surmise."  *American & Foreign Ins. Co. v. General Electric Co.*, 45 F.3d 135, 140 (6th Cir. 1995).  "*The mere possibility* that the defendant's negligence may have been the cause, either theoretical or conjectural, of an accident is not sufficient to establish a causal link between the two."  *Id.*

   In January 2009, the parties took the deposition of Kevin Gillespie, son of the former owner of Technical Products and a sales representative for the company until it ceased doing business in 1997.  [DE 76, pp. 4-5].  His father is deceased, and Gillespie is not aware of any company records still in existence.  *Id.*  He testified that Technical Products stopped doing business after it sold its assets to Ulrich Chemical in 1997.  [Gillespie Depo. at 19].  The company name was changed to Technical Ventures, Inc., but the new company did not distribute any chemicals. *Id.* at 19-20.  Mr. Gillespie did not represent Technical Products in the geographical area where Watkins worked.  *Id.* at 29.  Accordingly, he had little knowledge of what products were sold to Watkins' employer or when the sales were made.  However, he was involved in some capacity in updating all material safety data sheets.  *Id.* at *48.*  These sheets were updated about every year, or sooner

4

if there was a major change in a product.  *Id.* at 45.  He believed the last update for isopropyl alcohol would have been in 1997 because that was the last year the company was in business.  *Id.* at 47.  He further testified that isopropyl alcohol in one-gallon containers is volatile and would evaporate in 12 to 15 months.  *Id.* at 48, 51-52.

Plaintiffs rely on Technical Products' material safety data sheet that Watkins found in 2007 to support his claim that alcohol sold by Technical Products to his employer before 1997 was still around and being used ten years later in 2007.  This claim, however,  is based on his conclusion that the reference book was current and reflected products still being used in 2007.  [Affidavit, ¶ 8].  The Technical Products' data sheet that Watkins found in 2007 was dated 1993, fourteen years before he found it.  [Gillespie Depo. p. 38].  There is no factual support for the following conclusion in Watkins' affidavit:  "To the best of my knowledge, L3 Communications' reference binder of chemicals on stock in the spring of 2007 was up-to-date and current."  [DE 76-2 ¶ 8].  A reference binder containing a fourteen-year-old data sheet from a company that went out of business ten years earlier is strong evidence of the opposite conclusion.  This is particularly true when the product itself is volatile and evaporates.  "[U]nwarranted factual inferences" need not be accepted as true.  *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002).

Moreover, no factual support for Watkins' conclusion can be found in the following equivocal statement:  "Based upon my years and experience working for Raytheon/L3 Communications, it was my understanding and belief that the material safety data sheets were supposed to have been updated and replaced as new products were added or substituted."  *Id.* ¶ 9.  Once again, the statement is conclusory, without any factual basis for this understanding.  Moreover, it only concludes what was "supposed to have been" done.  Even if these conclusions were incorporated into Plaintiffs' complaint, they would "not infer more than the mere possibility of misconduct."  *Iqbal*, 129 S. Ct. at 1950.  The Complaint would still be subject to dismissal for failure to "show" that "the pleader is entitled to relief."  *Id.*

"Of all the elements necessary to support recovery in a tort action, causation is the most susceptible to summary determination...." *American & Foreign Ins. Co.*, 45 F.3d at 140. "Causation cannot be established solely by conjecture, speculation or surmise." *Id.* "Circumstantial evidence must be enough to elevate a theory from a mere possibility to an inference that it is more likely than not" that Technical Products' alcohol caused Watkins' injury. *Collins v. Ansell, Inc.*, 2003 WL 22769266 at *2 (W.D. Ky. 2003). Here, as in the *Collins* product liability case, "the circumstances surrounding Plaintiff's injury fail to justify such an inference." *Id.* Plaintiffs' evidence provides only the "mere possibility" that volatile alcohol distributed by Technical Products no less than `ten years earlier was the cause of Watkins' injury. *American & Foreign Ins. Co.*, 45 F.3d at 140.

An alternative ground for granting Technical Products' motion for summary judgment is based on the plain language of Plaintiffs' Complaint. Paragraph 21 of the Complaint says:

> In and during the course of his employment at L3 Communications, Plaintiff, Gary Watkins, was continually exposed to numerous chemicals, including, but not limited to [list of chemicals] manufactured and/or distributed by the Defendants from approximately 2001 until 2007.

[DE 1-6, ¶ 21].

The next paragraph says:

> During the course of his employment with L3 Communications, Plaintiff, Gary Watkins, was exposed to the aforesaid products manufactured and distributed by the defendants during the course of his work at the Bluegrass Army Depot in Madison County, Kentucky.

[DE 1-6, ¶ 22].

If Plaintiffs had said in Paragraph 21, "during the course of his employment at L3 Communications *from approximately 2001 until 2007*, Plaintiff, Gary Watkins, was continually exposed to numerous chemicals manufactured and/or distributed by the Defendants," then they would have had a persuasive argument that the time frame referred to the period of employment or exposure, rather than the date of distribution of the products. Instead, Plaintiffs **twice** placed the modifying time frame immediately after the allegation that the chemicals or products were

6

"manufactured and/or distributed by the Defendants."  As the court said in *Hughes v. Vanderbilt University*, 215 F.3d 543 (6th Cir. 2000), "[p]laintiffs are bound by admissions in their pleadings, and a party cannot create a factual issue by subsequently filing a conflicting affidavit."  *Id.* at 549. There is only one plausible interpretation of the plain language of Plaintiffs' Complaint, and that is an allegation that the products were manufactured or distributed between 2001 and 2007.  The uncontradicted evidence is that Technical Products did not exist after 1997 and did not distribute anything after 1997.  Accordingly, Plaintiffs' have failed to state any plausible claim against Technical Products.

III.   **CONCLUSION**

**IT IS ORDERED** that the motion of Technical Products, Inc. for summary judgment [DE 66] is **GRANTED**, and Technical Products, Inc. is **DISMISSED** as a party to this action, with prejudice.

This July 27, 2009.

**Signed By:**

**_Karl S. Forester_**   K S F

**United States Senior Judge**

7